IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 7:20-cr-00044 |
| | ) | |
| VERNA M. LEWIS | ) | |

**MEMORANDUM OPINION**

Defendant Verna M. Lewis is a physician who was convicted of unlawfully distributing

controlled substances, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  Pending before the

court is Lewis's motion under 28 U.S.C. § 2255, filed by and through counsel, asking the court

to vacate, set aside, or correct her sentence.  In her motion, Lewis raises several grounds. First,

she contends that she was not competent both during the commission of the offense and when

she entered into her plea agreement.  Second, she argues that her trial counsel was

constitutionally ineffective for failing to discuss or examine the prospect of raising the

affirmative defense of insanity and "for failing to raise Dr. Lewis's lack of competency."  (*See*

Sealed § 2255 Mot 1, Dkt. No. 54, redacted version available at Dkt. No. 69.)  She requests an

evidentiary hearing to address the factual issues underlying her claims.[1]  The United States

opposes the § 2255 motion and moves to dismiss it.

For the reasons set forth herein, the court will grant the government's motion to dismiss

and deny Lewis's § 2255 motion.  The court also will deny a certificate of appealability.

## I.  BACKGROUND

Lewis was seventy-one years old at the time she filed her § 2255 motion.  The

---

[1]  In lieu of an evidentiary hearing, Lewis moves the court for another psychiatric examination.  The court finds another examination—particularly at this late date—would be pointless.  What an examination may reveal about Lewis's mental state at this time does not control what her mental state was more than three years ago (as to the issue of competency) or more than four years ago (as to the issue of insanity).

government began investigating Lewis, suspecting that she was illegally prescribing opioids in connection with her Roanoke-based medical practice.  After a review of patient files, a medical expert concluded that Lewis had prescribed Schedule II opioids to three individuals outside the usual course of a professional practice and not for a legitimate medical purpose.  Lewis learned that she was a target of the investigation and retained attorney Jennifer DeGraw to represent her.  Lewis indicated a willingness to cooperate, to waive her right to be charged in an indictment, and to enter a plea of guilty to an information.

Notably, and because Lewis was experiencing medical issues at the time that potentially could have affected her competency, DeGraw requested a competency evaluation be performed prior to Lewis's entering into any plea agreement or pleading guilty.  (DeGraw Aff. ¶ 1, Dkt. No. 71-1.)  A competency evaluation and report were completed by Dr. Conrad Daum on February 28, 2020.  This included a personal examination of Lewis, as well as a review of her medical records.  Dr. Daum concluded in his written report that Lewis was competent to enter into the plea agreement and had a rational and factual understanding of its terms.  (Daum Comp. Report 4, Dkt. No. 71-2.)

In support of her § 2255 motion, Lewis has submitted an affidavit from D. Sylvester Hill, who is Lewis's nephew and who had power of attorney for her at the time of the criminal proceedings.  Hill asserts that Lewis's family had witnessed some "cognitive decline" in Lewis over a period of years, beginning in 2014.  (Hill Aff. ¶¶ 3–5, Dkt. No. 54-4.)  Thus—and at around the same time she was being evaluated by Dr. Daum—he arranged for her to be evaluated by a neurologist, Timothy L. Hormel.  Apparently, Dr. Hormel evaluated her on February 11, 2020, but Lewis has not provided treatment notes from that visit.  Instead, in a subsequent letter from Dr. Hormel dated April 17, 2020—which he gave in support of Lewis's disability application—Dr. Hormel simply describes that he first saw her on February 11, 2020, and

advised her that he thought she should stop seeing patients.  In that letter, he states that she is "currently [*i.e.*, as of April 2020] under evaluation for cognitive changes, which make it impossible for her to predictably work at her position as a physician."  (Dkt. No. 54-1.)

Lewis also has provided some other medical evidence, all of which post-dates the signing of her plea agreement in March 2020, and nearly all of which post-dates the date of her guilty plea proceeding, in August 2020.[2]  This evidence includes the following:

- A July 2020 report from Amy Sollinger, Ph.D, a neuropsychologist, describing a phone interview and remote testing of Lewis and setting forth her findings.[3]  (Dkt. No. 54-2, at 9–16.)  Dr. Sollinger noted that Lewis remained independent in her activities of daily living.  On a number of measures, Lewis scored in the above average range, although Sollinger stated that Lewis's "memory performance" was impaired.  (Dkt. No. 54-2, at 14.)  Ultimately, Dr. Sollinger diagnosed Lewis with "mild cognitive impairment" and concluded that "we cannot rule out the possibility of the early stages of a progressive neurodegenerative disease."  (*Id.*)

- Visit notes from Dr. Hormel dated September 16, 2020, describing Lewis as "stable" but also noting that she still has "cognitive impairment . . . with overload at times." (Dkt. No. 54-2, at 7.)

- An April 26, 2021 letter written by Dr. Daum in order to provide an opinion about "psychiatric disability," in which he opines that he would—as of April 2021— diagnose Lewis with "mild neurocognitive disorder due to multiple etiologies" because her disorder affects "important" activities of daily living.  (Dkt. No. 54-2, at 2–3.)  He also opined that her disorder would likely worsen over time.[4]

After receiving Dr. Daum's February 2020 report opining that Lewis was competent, the parties entered into a plea agreement, pursuant to Rule 11(c)(1)(C), on March 9, 2020.  The

---

[2] The court nonetheless discusses it here to give a full picture of the medical evidence.

[3] The interview and testing were conducted over the phone because of Covid-19.

[4] The court notes that some of the descriptions of the medical evidence in Lewis's briefing are not accurate.  For example, Lewis suggests that Dr. Daum's April 2021 report shows that he "has evidently changed his opinion" that Lewis was competent.  (§ 2255 Mot. 9 n.2.)  She also notes that Dr. Daum's opinion was based "in part" on assessments completed prior to the August 7, 2020 plea hearing.  (§ 2255 Mot. 3.)  Nowhere in his report, however, does he revoke, change, or even refer to his prior opinion on competency.  Instead, his April 2021 letter appears to have been written for a separate purpose—to support an application for disability benefits.  And yes, while Dr. Daum's later report discusses at least one report—Dr. Sollinger's—that was prepared in between the signing of the plea agreement and the guilty plea proceeding, even that report says nothing about *competency*.

agreement provided for a binding sentencing range of 0 to 60 months, and a $500,000 money judgment, as well as the forfeiture of two checking accounts.  Lewis also agreed to surrender all medical licenses and controlled substance registrations, to never apply for such licenses again, and to never practice medicine.  (*See generally* Plea Agreement, Dkt. No. 5.)  Lewis also entered into an agreed statement of facts acknowledging the misconduct underlying the charges.  (Dkt. No. 6.)

Lewis was charged in an information on August 7, 2020, and she pled guilty to the offenses charged that same day, pursuant to the plea agreement.  In addition to the other terms already noted, the plea agreement contained a waiver of Lewis's right to collaterally attack her conviction or sentence, with the exception of a collateral attack based on ineffective assistance of counsel.  (*Id.* at 9.)  Specifically, the agreement provided:

> I waive any right I may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel, and agree I will not file any document which seeks to disturb any such order, unless such filing is based on ineffective assistance of counsel.  **I agree and understand that if I file any court document (except for an appeal based on an issue not otherwise waived in this agreement; an appeal based on an issue that cannot be waived, by law; or a collateral attack based on ineffective assistance of counsel) seeking to disturb, in any way, any order imposed in my case, such action shall constitute a failure to comply with a provision of this agreement.**

(*Id.* (emphasis in original).)

At Lewis's guilty plea proceeding, held on August 7, 2020, Lewis appeared in person with her counsel.  During that hearing, the prosecutor described the plea agreement and specifically referenced Lewis's waiver of the right to "collaterally attack in any future proceeding any order issued in this matter unless such attack is based on ineffective assistance of counsel."  (Guilty Plea Tr. 16, Dkt. No. 62.)  The court also specifically asked Lewis about the

waiver. (*Id.* at 26–27.) Lewis told the court that she understood the rights she would be waiving if she pled guilty and that she still wanted to plead guilty. (*Id.*)

The plea proceeding also included a discussion about Lewis's understanding of the proceeding, which bears on her competency. For example, Lewis herself indicated that she did not have a condition that prevented her from understanding what the court or her counsel was telling her, and DeGraw stated that, in her opinion, Lewis was competent to enter a plea. (*Id.* at 7.) The court also specifically noted that it had reviewed Dr. Daum's report. The court further explained that its review of that report, as well as its own observations of Lewis in court on that day, led the court to believe that she was competent to proceed. (*Id.* at 12–13, 36.) The court accepted the guilty plea and took the plea agreement under advisement pending completion of a presentence report.

Lewis was sentenced on November 16, 2021. At the lengthy sentencing proceeding, both parties presented evidence and argument in support of their respective positions as to sentencing. (Sent. Tr. Minutes, Dkt. No. 45.) Both Dr. Daum and Dr. Bailey, Lewis's treating physician, testified regarding her medical condition. Neither indicated that she was not competent, either at the time of the offense or at the time of her guilty plea.

The court sentenced Lewis to 36 months in prison, a $10,000 fine, a $100 mandatory special assessment, and three years of supervised release. (Judgment, Dkt. No. 46.) It also ordered forfeiture as set forth in the plea agreement. (*Id.*) Lewis did not appeal.

## II.  ANALYSIS

### A.  Section 2255

Under 28 U.S.C. § 2255, a movant may attack her sentence or conviction on the grounds that it was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum

authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C.

§ 2255(a).  The movant bears the burden of proving grounds for collateral relief by a

preponderance of the evidence.  *See United States v. Cook*, Criminal No. 1:11-cr-188, 2019 WL

921448, at *1 (E.D. Va. Feb. 25, 2019) (citing *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir.

1967)).  In § 2255 proceedings, "[u]nless the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt

hearing thereon, determine the issues and make findings of fact and conclusions of law with

respect thereto."  § 2255(b).  The record in this case conclusively establishes that Lewis is not

entitled to relief, so the court addresses her motion without an evidentiary hearing.

## B.  Lewis's Waiver of Her Right to Collaterally Attack Her Conviction And Sentence

The United States first argues that Lewis's claim that she was not competent is barred

both because: (1) she procedurally defaulted that claim when she failed to appeal and she cannot

overcome her default; and (2) she waived her right to file that claim.  The court need not address

procedural default because it concludes that her valid waiver of her right to collaterally attack her

conviction and sentence bars her claim.

When the government seeks to enforce a waiver of appellate and collateral attack rights,

and the defendant does not contend that the government breached the plea agreement, the waiver

will be enforced if the record shows that the waiver is valid and that the challenged issues fall

within the scope of the waiver.  *United States v. Blick*, 408 F.3d 162, 168 (4th Cir. 2005); *see*

*also United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005) (concluding that collateral

attack waivers are generally enforceable following a knowing and voluntary guilty plea).

Generally, if a district court fully questions a defendant during the Rule 11 hearing regarding her

waiver of appellate and collateral attack rights, the waiver is both valid and enforceable.  *See*

*United States v. Johnson*, 410 F.3d 137, 151 (4th Cir.2005).  Indeed, a defendant's solemn

declarations in open court affirming a plea agreement "carry a strong presumption of verity." *United States v. White*, 366 F.3d 291, 295 (4th Cir. 2004) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

As an initial matter, it is clear that Lewis's claim falls within the scope of her collateral attack waiver, which is broad and exempts only claims of ineffective assistance of counsel. Having reviewed the record in this case, the court further concludes that Lewis's waiver of her collateral attack rights, and her plea itself, was knowingly and voluntarily made. During the Rule 11 hearing, the court fully questioned Lewis regarding her intent to waive her right to appeal and to collaterally attack the judgment or sentenced imposed. Lewis acknowledged that she understood the plea agreement and understood she was waiving those rights. (Guilty Plea Tr. 26–27.) Lewis also testified that no one had forced her to plead guilty or promised her anything to obtain her guilty plea, other than what was in the plea agreement. (*Id.* at 18–19.)

Further, to the extent that Lewis is arguing that her plea agreement—or her guilty plea— were unknowing or invalid because she was incompetent at the time, she provides no evidence of incompetence, either at the time she signed her plea agreement—on March 9, 2020—or on the date she pled guilty in court—August 7, 2020. Indeed, she was examined approximately ten days before she entered into the plea agreement and mere months before the guilty plea proceeding, and an independent physician found her to be competent.

In support of her claim that she was not competent (and that her plea and plea agreement should be set aside), Lewis relies on the medical testimony discussed *supra*. She also relies on the testimony of Drs. Daum and Bailey, both of whom testified at her sentencing in November 2021. Dr. Bailey testified that he had diagnosed Lewis with sleep apnea, and he noted that she had been prescribed a CPAP, which would help with cognition issues. (Sent. Hr'g Tr. 89–90, 105, Dkt. No. 60.)

7

Dr. Bailey testified that Lewis first expressed concerns about her cognitive abilities in early 2020.[5]  He testified that he had referred her to a neurocognitive specialist and, in May 2021 had prescribed her a medication typically used to delay the progression of dementia.  (*Id.* at 91.)  Dr. Bailey stated that Lewis had not been diagnosed with dementia, but rather with a mild to moderate cognitive disorder consistent with a form of dementia, although he described that as "kind of semantics."  (*Id.* at 93.)  Dr. Bailey also acknowledged that Lewis was living independently, driving, and able to take care of herself.  (*Id.* at 101–02.)

Dr. Daum noted that much of Lewis's cognitive functioning was still intact but she had "micro areas" of intellectual disability.  He also testified at sentencing that he diagnosed her, as of April 2021, with mild dementia.  (*Id.* at 110.)  Like Dr. Bailey, Dr. Daum testified that she could still live independently, drive a car, and feed herself.  (*Id.* at 126–27.)

The court does not agree that the medical evidence calls into question Lewis's competency when she entered into her plea agreement or when she pled guilty.  First of all, many of the letters and reports, as well as the diagnoses discussed at sentencing, were addressing her condition many months (or longer) after she pled guilty.  To be sure, there is evidence that Lewis had begun to experience some cognitive decline at the relevant time.  But even as to later diagnoses, she was described as having either a "mild cognitive impairment" or "mild neurocognitive disorder."  Further, no physician has opined that she was incompetent at any time, and Dr. Daum, in fact, concluded that she was competent days before she signed the written plea agreement.

---

[5]  Lewis now suggests that Dr. Bailey's statement of that timing ignores Hill's "numerous" attempts to raise the family's concerns of cognitive decline, (Reply at 7), which Hill claims the family noticed as far back as 2014. (Hill Aff. ¶ 3.)  Lewis also faults Dr. Bailey for "never follow[ing] up" with Hill.  (Reply at 7.)  Lewis cites to Hill's affidavit to support these assertions, but Hill's affidavit does not even reference Dr. Bailey, let alone provide any background about purported discussions between Hill and him.  (*See generally* Aff., Dkt. No. 54-4.)

Even assuming her mild impairments existed at the time she pled guilty, they are a far cry from a finding of "incompetence."  As the United States correctly notes, the standard for incompetence is significantly higher than the problems Lewis was experiencing:  "Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.  Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." *Walton v. Angelone*, 321 F.3d 442, 459–60 (4th Cir. 2003) (citations omitted).  Instead, a defendant is competent to stand trial if she "has sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding . . . [and] has a rational as well as factual understanding of the proceedings against [her]." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

Put differently, the mere fact that someone may suffer from some mild cognitive issues, including even dementia, does not mean that they are incompetent.  Indeed, although each case must be considered on its facts, there are many cases where an individual diagnosed with dementia or like illnesses was nonetheless found competent to stand trial.  *E.g.*, *United States v. Casteel*, 717 F.3d 635, 641 (8th Cir. 2013) (affirming district court's conclusion that defendant who had been diagnosed as suffering from schizophrenia with depression, dementia, and mental retardation was nonetheless competent); *United States v. Rainone*, 32 F.3d 1203, 1207–08 (7th Cir. 1994) (affirming district court's decision that defendant was competent, despite the fact that the defendant was 75 years old at the time of trial and was "showing early signs of senile dementia of the Alzheimer's type"); *United States v. Madison*, No. 6:17-cr-15-Orl-37LRH, 2020 WL 8461574, at *3, 30, 37 (M.D. Fla. Oct. 29, 2020), *report and recommendation adopted,* No. 6:17-CR-15-ORL-37LRH, 2020 WL 7768460 (M.D. Fla. Dec. 30, 2020), *aff'd,* No. 21-12611, 2022 WL 4298175 (11th Cir. Sept. 19, 2022) (finding that defendant had shown he presently

suffered from brain damage and vascular dementia, but relying on expert's report to conclude he was nonetheless competent to stand trial); *United States v. Bradley*, 2009 WL 1064470, at *3 (S.D. Ga. Apr. 20, 2009) (noting that defendant had been found competent to stand trial despite several reports from defendant's experts diagnosing him with dementia); *United States v. Velez De Castro*, No. Crim. 02-214(SEC), 2005 WL 2416360, at *4 (D.P.R. Sept. 30, 2005) (concluding that defendant was competent to stand trial despite the fact that he was suffering from a mental illness and at least one physician had diagnosed him with dementia, and explaining that "competency goes to the ability to participate effectively in one's own case") (citation omitted).

Lewis simply has provided no evidence that she was, in fact, incompetent at the time of her plea agreement or guilty plea proceedings. Nor does the court believe that the medical evidence before it calls into question her competency at that time, so as to warrant an evidentiary hearing. Instead, the court concludes that Lewis was competent to plead guilty. Thus, Lewis's plea—and her waiver of her § 2255 rights—was knowing and voluntary. Her wavier is therefore valid and enforceable, and it bars her first claim.[6]

Even if the court were to consider her claim on the merits, she has not provided any evidence to show that she was incompetent, as already discussed. Thus, her first claim also fails on its merits.

## C.  Lewis Cannot Establish That Her Counsel Was Constitutionally Ineffective

Lewis's second claim is that her counsel was constitutionally ineffective for failing to do more to challenge Lewis's competency and for failing to consider or raise an "insanity defense."

---

[6] There are a narrow group of claims that can proceed despite a valid waiver. They include that the sentence was imposed in excess of the maximum penalty provided by law, that the sentence was based on a constitutionally impermissible factor such as race, or claims that the defendant was deprived of effective assistance of counsel at a proceeding following the entry of the waiver, such as at sentencing. *United States v. Lemaster*, 403 F.3d 216, 220 n.2 (4th Cir. 2005). Lewis's claim does not fall within these narrow categories.

Criminal defendants have a Sixth Amendment right to effective legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to establish a viable ineffective assistance claim, a defendant must satisfy a two-prong analysis: she must show both that counsel's performance fell below an objective standard of reasonableness and that she was prejudiced by counsel's alleged deficient performance. *Id.* at 669.

When considering the reasonableness prong of *Strickland*, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *Gray v. Branker*, 529 F.3d 220, 228–29 (4th Cir. 2008). Counsel's performance is judged "on the facts of the particular case," and assessed "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004).

To satisfy the prejudice prong of *Strickland*, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant who has pleaded guilty must demonstrate that, but for counsel's alleged error, there is a reasonable probability that she would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Lewis's claim of ineffective assistance of counsel does not satisfy the stringent requirements *of Strickland.*

First of all, as to competency, it is unclear what more Lewis believes her counsel should have done. Lewis states that her counsel should have "raised" the issue of her potential incompetency, (§ 2255 Mot. 1), but counsel did so, and specifically hired a physician to address competency. That the physician ultimately found Lewis was competent does not mean that counsel failed in some way to ascertain or ensure Lewis's competency. In her reply, Lewis faults

DeGraw for not investigating more fully.  For example, she claims that DeGraw did not fully

discuss the issue of competency with Lewis or with Hill and suggests that perhaps DeGraw

should have asked for a second opinion as to competency.  (Reply 8, Dkt. No. 74.)  But the court

must evaluate DeGraw's conduct based on what she knew or had access to at the time.

*Strickland*, 466 U.S. at 689.  At the most, DeGraw knew (if she had credited everything Hill says

he conveyed to her) that Lewis's cognitive functioning had declined over some period of years

and that she had stopped seeing patients.  But, as already discussed, some decline in cognitive

functioning, and even dementia does not necessarily constitute incompetence.  In short, the court

cannot find that DeGraw's conduct in investigating Lewis's competence fell below an objective

standard of reasonableness.  *See id.* at 669.

 Additionally, Lewis cannot show prejudice as to this claim.  She has not shown that, had

counsel done something else, Lewis would have been found incompetent.  As discussed in

Section II-B *infra*, she has not presented any evidence to show she was incompetent at the time

she entered into her plea agreement or at the time she pled guilty.  Nor does she show,

particularly in light of her admissions at her plea colloquy and her factual admissions, that she

would not have pled guilty had her counsel taken some additional, unspecified action to address

her competency.

 Lewis's claim that her counsel should have investigated or pursued an insanity defense is

similarly infirm.  First of all, to the extent she is claiming she had a valid insanity offense, she

waived her right to assert any such defense by pleading guilty.  *See Speed v. United States*, 441

F.2d 1106, 1107 (5th Cir. 1971) (appellant was foreclosed from attacking convictions in a § 2255

proceeding on insanity grounds because his plea of guilty constituted a waiver of all non-

jurisdictional defenses); *United States v. Moore*, 599 F.2d 310, 315 (9th Cir. 1979) ("Insanity at

the time of the offense cannot be the basis of a § 2255 motion when a defendant's guilty plea

12

was properly accepted by the trial court as voluntarily and understandably made.").  Although Lewis insists that her plea was not knowing or voluntary because of an alleged lack of competence, the court already has considered—and rejected—that argument.  *See supra* at Section II-B.  Therefore, any such claim is barred.

To the extent her claim is that her counsel was ineffective for failing to investigate an insanity defense, the Fourth Circuit has recognized that such a claim is not barred where the defense "related to the defendant's decision to plead guilty."  *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013) (addressing such a claim on its merits despite a guilty plea).  Thus, while Lewis cannot directly challenge her conviction on the grounds that she was legally insane at the time of the offense, she may raise in her § 2255 motion the ineffective assistance claim she has here—that counsel was ineffective for failing to pursue such a claim.

Her ineffective assistance claim nonetheless fails because Lewis has presented no evidence that she was insane at the time of the offense.  A lawyer is not deficient for failing "to advise clients of unmeritorious defenses."  *United States v. Fugit*, 703 F.3d 248, 259–60 (4th Cir. 2012).  Nor does a failure to investigate or raise an unmeritorious defense result in any prejudice. *United States v. Barrero*, No. 6:17-CR-00426-JMC, 2022 WL 3030752, at *5–7 (D.S.C. Aug. 1, 2022) (rejecting a § 2255 movant's claim that her counsel was constitutionally deficient for failing to investigate an insanity defense where there was no evidence that she suffered from a "severe mental disease or defect" or that she "could not discern right from wrong").

Importantly, Lewis has not pointed to any evidence to show that she was insane at the time of the offense, *i.e.*, that she had a severe mental disease or defect such that she was unable to appreciate the nature and quality or the wrongfulness of her acts.  18 U.S.C. § 17(a); *United States v. Worrell*, 313 F.3d 867, 872 (4th Cir. 2002) (discussing standard).  Here, the conduct underlying the offense occurred between on or about April 12, 2017, and on or about March 13,

2019.  (Information, Dkt. No. 1.)  Lewis attempts to support her potential insanity defense with the medical evidence the court already has discussed—all of which post-dates the offense conduct, as well as with Hill's assertion that Lewis's cognitive decline began as early as 2014.

Considering all of this evidence, the court concludes that there is nothing in the record that would support a valid insanity defense, and nothing in any of the medical records or otherwise that suggests Lewis could not distinguish between right and wrong between April 2017 and March 2019.  While not dispositive of the issue, the court further notes that Lewis's counsel has offered sworn testimony that counsel considered and rejected an insanity defense, concluding that it "was not supported by the evidence, counsel's interactions with Ms. Lewis, or the circumstances of Ms. Lewis' daily life at the time of offense."  (DeGraw Aff. ¶ 5.)  Counsel was not objectively unreasonable in so concluding.

Moreover, the United States point out—and Lewis does not deny—that there are recordings between Lewis and a confidential source that strongly suggest that she was aware that she was acting wrongfully.  For example, on one of the recordings, Lewis told the source that he would not be able to go to any other physician and obtain the medication he was getting from her. (Sent. Tr. 63.)  In another, she tries to get him to obtain one of the prescriptions he seeks (a benzo, Xanax) from another physician, and the case agent explained that the combination of an opioid and benzo would carry a heightened propensity of overdose, regardless of whether the prescriptions are written by one physician or two.  (*Id.* at 52–53.)  In his experience, physicians will have patients choose between a benzo and an opioid.  (*Id.* at 53.)  These recordings greatly undermine any insanity defense.

Because Lewis had no insanity defense available to her, her claim of ineffective assistance of counsel based on a failure to investigate or raise such a defense fails.  *See Barrero*, 2022 WL 3030752, at *5.

14

**D.  Certificate of Appealability**

When issuing a final order adverse to the § 2255 movant, the court must issue or deny a

certificate of appealability.  *See* Fed. R. Gov. § 2255 Proc. 11(a).  A certificate of appealability

may issue only if the movant has made a substantial showing of the denial of a constitutional

right.  28 U.S.C. § 2253(c)(2).  The petitioner meets this threshold when they "demonstrate that

the issues are debatable among jurists of reason; that a court could resolve the issues [in a

different manner]; or that the questions are 'adequate to deserve encouragement to proceed

further.'" *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (citing *Barefoot v. Estelle*, 463 U.S. 880,

893 n.4 (1983)).

When a district court dismisses a § 2255 motion on procedural grounds, a certificate of

appealability will not issue unless the movant can demonstrate both that (1) jurists of reason

would find it debatable whether the motion states a valid claim of the denial of a constitutional

right; and (2) jurists of reason would find it debatable whether the district court was correct in its

procedural ruling.  *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*,

529 U.S. 473, 484 (2000)).

The court declines to issue a certificate of appealability because Lewis has not

demonstrated that reasonable jurists would find it debatable that the motion states a valid claim

of the denial of a constitutional right or that the court was correct in any procedural rulings.

III. CONCLUSION

For the reasons above, the court will deny Lewis's § 2255 motion and will grant the

government's motion to dismiss.  The court also will decline to grant a certificate of

appealability.  The court will issue an appropriate order.

       Entered: November 20, 2023.


                  */s/ Elizabeth K. Dillon*
                  Elizabeth K. Dillon
                  United States District Judge